# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | |
|---|---|
| IN RE ACCELERATED RECOVERY SYSTEMS, INC., <br><br> *Bankruptcy Appellee.* | CIVIL ACTION NO. 3:09-CV-00042 (CONSOLIDATED LEAD CASE; SEE ALSO MEMBER CASES 3:09-CV-00044, 3:09-CV-00046, 3:09-CV-00047, & 3:09-CV-00048) <br><br> **MEMORANDUM OPINION** <br><br> JUDGE NORMAN K. MOON |

These consolidated bankruptcy appeals[1] present the following questions regarding appellants' claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*:

1. Did the Bankruptcy Court err by finding that [a debt collection letter from appellee to appellant] did not violate 15 U.S.C. § 1692e(7) by falsely representing or implying that the consumer committed a crime or other conduct in order to disgrace the consumer?

2. Did the Bankruptcy Court err by finding that [debt collection letters from appellee to appellants] did not violate 15 U.S.C. § 1692g(a)(3) by failing to give [appellants] 30 days from the date of the receipt of the original communication from [appellee] to dispute the debt owed due to the bona fide error defense?

3. Did the Bankruptcy Court err by finding that the only damages asserted by [appellants] were [their] attorney fees?

---

[1] Because the cases involve common questions of law and fact, they were consolidated, pursuant to Federal Rule of Civil Procedure 42(a), by order entered on November 18, 2009. *Steven Wayne Marshall v. Accelerated Recovery Systems, Inc.*, Civil Action No. 3:09cv00042, was designated the "lead case" in this consolidated action for purposes of docketing and filing, and the following cases were designated "member cases": *Carolyn Lynn White v. Accelerated Recovery Systems, Inc.*, Civil Action No. 3:09cv00044; *Camellia A. James v. Accelerated Recovery Systems, Inc.*, Civil Action No. 3:09cv00046; *Camellia A. James v. Accelerated Recovery Systems, Inc.*, Civil Action No. 3:09cv00047; and *Stacy Nicole Johnson v. Accelerated Recovery Systems, Inc.*, Civil Action No. 3:09cv00048.

The first question presented arises only in the lead case, filed by appellant Steven Wayne Marshall. The second and third questions presented arise in all five cases in this consolidated action. On appeal, this court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. As explained herein, I find that the bankruptcy court erred on all three questions,[2] and will remand the matter to the bankruptcy court with instructions.

## I.

The issues in this action arise under the FDCPA, which protects consumers from abusive, deceptive, and unfair debt collection practices, and ensures that non-abusive debt collectors will not face a competitive disadvantage. 15 U.S.C. § 1692; *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135 (4th Cir. 1996); *McHugh v. Check Investors, Inc.*, 2003 WL 21283288 at *3, Civil Action No. 5:02-cv-00106 (W.D. Va. May 21, 2003). The FDCPA is a strict liability statute requiring only evidence of "the capacity of the statement to mislead; evidence of actual deception is unnecessary." *Nat'l Fin. Servs., Inc.*, 98 F.3d at 139; *Morgan v. Credit Adjustment Bd., Inc.*, 999 F. Supp. 803, 805-06 (E.D. Va. 1998) (citing *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2nd Cir. 1996) (holding the FDCPA is a remedial, strict liability statute requiring no proof of deception or actual damages to obtain its statutory remedies)). The FDCPA entitles a successful plaintiff to an award of actual damages, to a statutory award of up to $1000, and to costs and reasonable attorney's fees. 15 U.S.C. § 1692k(a); *McHugh* at *3; *Morgan* at 808; *Russell*, 74 F.3d at 33 (FDCPA requires

---

[2] This court "review[s] the bankruptcy court's legal conclusions *de novo* and its factual findings for clear error." *In re Harford Sands Inc.*, 372 F.3d 637, 639 (4th Cir. 2004). In cases where the issues present mixed questions of law and fact, the court applies the clearly erroneous standard to the factual portion of the inquiry and *de novo* review to the legal conclusions derived from those facts. *Gilbane Bldg. Co. v. Fed. Reserve Bank*, 80 F.3d 895, 905 (4th Cir. 1996).

2

no proof of deception or actual damages to obtain its statutory remedies).

**II.**

The first question presented arises only in the lead case, filed by appellant Steven Wayne Marshall. On September 22, 2008, Marshall filed a Chapter 7 petition with the Clerk of the Bankruptcy Court for the Western District of Virginia. On November 6, 2008, Marshall filed an adversary proceeding against appellee, Accelerated Recovery Systems, Inc. ("ARS"), for violations of the FDCPA. As the bankruptcy court observed, appellee "admits that it is a debt collector, as required under" the FDCPA. One of Marshall's claims was that a debt collection letter from appellee violated 15 U.S.C. § 1692e(7), which specifically prohibits "[t]he false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer." Significantly, the statute "proscribe[s] conduct beyond falsely implying that a debtor committed a crime. . . . [T]he statute also proscribe[s] conduct that shames or humiliates a debtor." *McMillan v. Collection Professionals Inc.*, 455 F.3d 754, 763 (7th Cir. 2006).

On June 8, 2009, the bankruptcy court issued a memorandum entering judgment for appellee, and Marshall timely appealed to this court.

In its memorandum, the bankruptcy court stated the following facts (quoted verbatim):

On September 22, 2008, [Marshall] filed a chapter 7 petition with the Clerk of the bankruptcy court. . . . The debtor scheduled a debt owed to Scottsville IGA in the total amount of $410.23. The schedules further indicate that the debt arises from the return of three checks that were drafted by the Debtor and returned to Scottsville IGA for non-sufficient funds when presented for payment.

Pre-petition, [Marshall] received a notice ("the Notice") from the [appellee] on behalf of Darrell Payne seeking to collect the debt as owed to him as scheduled by [Marshall]. The Notice stated that unless the debtor disputed the validity of the debt within 30 days from the date of the Notice that the [appellee] would assume that the debt was valid.

3

The Notice also contained a handwritten statement "you promised to pay this on 9/6/08 - if we file warrants, it will be a felony".

In its discussion, the bankruptcy court observed that one of Marshall's claims asserted that appellee "violated 11 [*sic*] U.S.C. § 1692e(7) by representing or implying that [Marshall] had committed a crime." The bankruptcy court stated that § 1692e(7) "provides in relevant part that it is a violation of the statute to falsely represent or imply that the consumer committed any crime in order to disgrace the consumer." The bankruptcy court found that "[t]here are two possible interpretations of" the handwritten statement[3] "if we file warrants, it will be a felony," and explained:

> The statement could be construed to mean "if we file warrants, you will be charged with a felony" or "if we file the warrants, you will be found guilty of a felony". [*sic*, punct.] The first may be quite fairly be [*sic*] said to be true. The second is not necessarily true. The Court believes that even the least sophisticated consumer would conclude that he or she would have a day in court; [*sic*, punct.] would believe that he or she would not necessarily be found guilty of the charge. So it is concluded that the first interpretation is the more reasonable, and more accurate, interpretation.

As I have already observed, the FDCPA is a strict liability statute requiring only evidence of

---

[3] I have reviewed the letter, which is part of the record before me. It is a form letter, captioned "NOTICE OF AUTHORITY TO FILE SUIT," and the handwritten statement is written in the "COMMENTS" section, which provides two blank lines for handwritten or typewritten entries. The letter also includes the following statements:

> FURTHER ACTION TO COMMENCE ON September 19, 2008 UNLESS PAYMENT IS RECEIVED BEFORE THIS DATE. IF SUIT IS FILED, THERE WILL BE COURT COST ADDED AND ATTORNEY'S FEES AS ALLOWED BY YOUR CONTRACT. . . . WE REGRET THE NECESSITY OF THIS ACTION, BUT ALL OTHER EFFORTS HAVING FAILED, PROCEEDINGS MAY COMMENCE AUTOMATICALLY UNLESS PAYMENT IS RECEIVED.

Appellee contends that this court cannot consider the letter, which was attached to the appellant's brief because it was not received into evidence by the bankruptcy court. However, in its answer to the complaint in the bankruptcy court, appellee admitted sending the letter. Moreover, its submissions to this court include quotations from the transcript of the hearing before the bankruptcy court, explicitly referring to the letter, and indicating that a witness was handling the letter and discussing it. Finally, the bankruptcy court explicitly refers to and quotes from the letter in its memorandum of June 8, 2009.

"the capacity of the statement to mislead; evidence of actual deception is unnecessary." *Nat'l Fin. Servs., Inc.*, 98 F.3d at 139. In considering whether there was an FDCPA violation, a court is to use the "least sophisticated consumer" standard, "to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Id.* at 136 (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2nd Cir. 1993)); *see also Chaudhry v. Gailerizzo*, 174 F.3d 394, 408-09 (4th Cir. 1999) (stating that the doctrine is designed to protect "naive" consumers who do not understand law or finance, not people with unrealistic or irrational expectations); *Talbott v. GC Services Ltd. Partnership*, 53 F. Supp. 2d 846, 850 (W.D. Va. 1999) ("'basic purpose of the lease-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd'" (citations omitted)). To be sure, the "least sophisticated consumer" standard does not protect a consumer who assigns a bizarre or idiosyncratic interpretation to a collection notice; a consumer is presumed to possess "a quotient of reasonableness" and is viewed as possessing the capacity to read or listen to the communication with care. *Nat'l Fin. Servs.*, 98 F.3d at 136. Notwithstanding such qualifications, however, the standard for the least sophisticated consumer "'is low, close to the bottom of the sophistication meter.'" *Morgan*, 999 F. Supp at 805 (quoting *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir. 1996); *see also Gammon v. GC Servs.*, 27 F.3d 1254, 1257 (7th Cir. 1994) ) ("[s]tated another way, [the least sophisticated consumer] is the single most unsophisticated consumer who exists").

      The bankruptcy court observed that the handwritten statement could be "construed" to have two meanings. That the statement could be "construed" to have one or another meaning indicates that it could be confusing to the least sophisticated consumer. Moreover, the statement is not, as the bankruptcy court construed it, "if we file warrants, you will be charged with a felony." And, contrary to the bankruptcy court's construction, the statement does not suggest that appellant would have his

5

day in court; rather, the statement is, "if we file warrants, it will be a felony." The plain meaning of the statement "if we file warrants, it will be a felony" is "if we file warrants, it will be a felony." It would not be unreasonable for the least sophisticated consumer -- a person unlettered in law, and not presumed to be familiar with the legal process for bad checks -- to conclude that, if appellee filed warrants, "it [would] be a felony." It is clearly erroneous for the bankruptcy court to have "construed" the handwritten statement as saying anything else, and as a matter of law the least sophisticated consumer is not a person who bears the responsibility of "interpret[ing]" the statement as the bankruptcy court did.

Nonetheless, after concluding that the least sophisticated consumer would construe the handwritten statement as meaning that he would have his day in court, the bankruptcy court reasoned that

> [t]he issue, then, is whether [Marshall] would be charged with a felony if the [appellee] filed warrants. The Virginia Code provides that:
>
>> It shall be a Class 6 felony for any person, within a period of ninety days, to issue two or more checks, drafts or orders for the payment of money in violation of § 18.2-181, which have an aggregate represented value of $200 or more and which (i) are drawn upon the same account of any bank, banking institution, trust company or other depository and (ii) are made payable to the same person, firm or corporation.
>
> Va. Code § 18.2-181.1. And Section 18.2-181 provides:
>
>> Any person who, with intent to defraud, shall make or draw or utter or deliver any check, draft, or order for the payment of money, upon any bank, banking institution, trust company, or other depository, knowing, at the time of such making, drawing, uttering or delivering, that the maker or drawer has not sufficient funds in, or credit with, such bank, banking institution, trust company, or other depository, for the payment of such check, draft or order, although no express representation is made in reference thereto, shall be guilty of larceny;

6

and, if this check, draft, or order has a represented value of $200 or more, such person shall be guilty of a Class 6 felony. In cases in which such value is less than $200, the person shall be guilty of a Class 1 misdemeanor.

The checks total more than $200.00. All of the checks are made payable to Scottsville IGA. The checks total more than $200.00. The [appellee] asserts, and [Marshall] does not dispute, that the other elements necessary for a class 6 felony are present here. Consequently, it must be concluded that if the [appellee] had filed the warrants, [Marshall] would be facing a class 6 felony. The statement was true and the [appellee] has not violated.

Again, the bankruptcy court's reasoning is factually and legally incorrect. Assuming *arguendo* that the least sophisticated consumer would construe the handwritten statement as the bankruptcy court did, and that "[t]he issue . . . is whether [Marshall] would be charged with a felony if the [appellee] filed warrants," it is not true that ***all*** "the other elements for a class 6 felony are present here." As appellant points out, this section of the Virginia Code recites a specific intent crime, stating that a "person who, *with intent to defraud*" writes a bad check "*knowing, at the time of such* making, drawing, uttering or delivering, *that the maker or drawer has not sufficient funds in*, or credit with, such bank . . . for the payment of such check . . . shall be guilty of larceny. . . ." Va. Code. § 18.2-181 (emphasis added); *see also Sylvestre v. Commonwealth*, 10 Va. App. 253, 258 (1990) (a conviction under Code § 18.2-181 requires proof of, among other things, "the fraudulent intent of the drawer of the check"); *Bray v. Commonwealth*, 9 Va. App. 417, 422 (1990) (observing that "the gravamen of the offense" set forth in Code § 18.2-181 is "the intent to defraud," and that "[s]uch intent is an indispensable element of the crime and *the burden is upon the Commonwealth to prove its existence at the time of drawing or uttering the check*" (emphasis added)). The record reveals no indication that appellee has proved or ever even alleged that Marshall intended to defraud Scottsville IGA, that there was any fraudulent intent on Marshall's behalf, or that Marshall knew at

the time he wrote the check that he had insufficient funds in his account to cover the check. "[T]here are a variety of reasons that a check may be dishonored that do not necessarily indicate that an individual did not have every intention of paying the underlying debt when the check was issued.[] Indeed, the legislative history of the FDCPA indicates that Congress was aware that not all debtors actually intend to become delinquent on their debts. . . ." *McMillan*, 455 F.3d at 761-62.

The handwritten statement is "if we file warrants, it will *be* a felony." (Emphasis added.) For the statement to have been true, as the bankruptcy court concluded, all of the elements would have to have been proved, and the record does not support such a conclusion. Furthermore, assuming that all of the elements were likely to have been proved in this instance, the mere filing of "warrants," as appellee stated in the handwritten statement, would not make Marshall's conduct "*be* a felony." (Emphasis added.) Indeed, appellee's statement "if we file warrants" is misleading, given that appellee could not have "file[d]" *any* "warrant[]." Instead, had appellee wished to pursue a criminal action against Marshall, appellee would have filed not a "warrant," but a "complaint," *i.e.*, a "complaint of a criminal offense to an[] *officer authorized to issue criminal warrants*. . . ."[4] Va. Code. § 19.2-72 (emphasis added). Only upon finding "that there is probable cause to believe the accused had committed an offense" does "such officer . . . issue a warrant" for the alleged offender's arrest. *Id*. Significantly, § 19.2-72 provides that

> no magistrate may issue an arrest warrant for a felony offense upon the basis of a complaint by a person other than a law-enforcement officer without prior consultation by the magistrate with the attorney for the Commonwealth or, if no attorney for the Commonwealth is available, without prior consultation with a

---

[4] Although the use of the words "file warrants" might have colloquial meaning in a legal context, the least sophisticated consumer doctrine protects "gullible" or "naive" consumers who may not understand the threat, "if we file warrants," in context. S*ee Talbott*, 53 F. Supp. 2d at 850 ("gullible"); *Chaudhry*, 174 F.3d at 408-09 ("naive").

8

law-enforcement agency having jurisdiction over the alleged offense.

*Id*. Thus, it does not appear a foregone conclusion that, had appellee filed a "complaint of a criminal offense" to an "officer authorized to issue criminal warrants," *id.*, the offense would automatically "be" a felony, or even that any charge would "be" a felony charge. First, an "attorney for the Commonwealth" or "a law-enforcement agency having jurisdiction over the alleged offense" would review the complaint before a "warrant" would issue. *Id*. Second, it would appear that, before issuing a warrant for Marshall's arrest for a Class 6 felony, the attorney for the Commonwealth or agency having jurisdiction would review the complained-of offense to determine whether all of the elements were present to justify a Class 6 felony arrest warrant. Va. Code 18.2-181.

Appellee cannot avoid liability under § 1692e(7) of the FDCPA for the handwritten statement. Contrary to the bankruptcy court's conclusion that "[t]he statement was true and the [appellee] has not violated," the statement, as a matter of law, was not true, and it violates § 1692e(7). The handwritten statement falsely represents that, if appellee exercised its discretion (which it did not actually possess) to "file warrants, it [would] be a felony." 15 U.S.C. § 1692e(7); *see also McHugh*, *supra*, 2003 WL 21283288 at *1 (finding a violation of § 1692e(7) where consumer, who had written checks that had been dishonored at a grocery, received collection letter stating that "her case was 'being reviewed to determine if criminal prosecution' would be 'recommended.'"); *Irwin v. Mascott*, 112 F. Supp. 2d 937, 948 (N.D. Cal. Aug. 31, 2000) (finding that debt collector had violated "§ 1692e(7) by sending collection letters which reference Cal. Penal Code § 490.5, because these letters state or imply that by writing a check that did not clear, the check

9

writer has committed larceny").[5]

Accordingly, Marshall's claim under § 1692e(7) of the FDCPA will be remanded to the bankruptcy court for a statutory award, for costs and reasonable attorney's fees, as provided by § 1692k(a) of the FDCPA, and for consideration of an award of actual damages.

### III.

The second question presented arises in all five cases in this consolidated action. The bankruptcy court stated as follows in each of the five cases:

> [Appellants] assert[] that [appellee] violated 11 U.S.C. § 1692g(a)(3) by failing to give the [appellants] 30 days from the date of the receipt of the original communication from the [appellee] to dispute the debt owed. While the notice gives the [appellants] 30 days notice to dispute the debt, it does so from the date on the notice, not from the date that the notice was received.
>
> A debt collector must, within five days after the initial communication with a consumer in connection with the collection of any debt, provide the consumer with a statement that the debtor collector will assume that the debt is valid unless the consumer, *within thirty days after receipt of the notice*, disputes the validity of the debt, or any portion thereof. 15 U.S.C. § 1692g(a)(3). The notice may be contained

---

[5] *See also McMillan*, 455 F.3d at 756 (finding a violation of § 1692e(7) when consumer received a letter stating "YOU ARE EITHER HONEST OR DISHONEST YOU CANNOT BE BOTH," as well as other statements implying that the consumer was "dishonest.") In *McMillan*, the United States Court of Appeals for the Seventh Circuit found that, "[b]y calling into question a debtor's honesty and good intentions simply because a check was dishonored, a collection letter may be making a statement that it false or misleading to the unsophisticated consumer." 455 F.3d at 762. In the instant case, by stating "if we file warrants, it will be a felony," appellee made a statement that is false and misleading to the "unsophisticated" or "least sophisticated" consumer. The Seventh Circuit found that the statement in *McMillan* was intended to "disgrace the consumer," explaining:

> We believe that this language makes clear that Congress intended to proscribe conduct beyond falsely implying that a debtor committed a crime. When the statutory term "disgrace" is given its normal meaning, it is clear that Congress intended that the statute also proscribe conduct that shames or humiliates a debtor. Calling into question another's honesty, and implying that the individual has dishonest intentions arguably rises to the level of language that could shame or humiliate the reader of the letter.

455 F.3d at 763

> in the original communication. **In this case, the notice does not strictly comport with the requirements of Section 1692g(a)(3)**.
>
> Section 1692k(c), however, exempts from liability any debt collector who can show by a preponderance of the evidence that "the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." In this case, the principal of the [appellee], Betty Wheelock, testified that she was unaware that the notice was in violation of the section, that she had purchased a noticing program from an entity that had assured here [*sic*] that it was in compliance with all applicable statutes and that she had never received a complaint concerning the notice period even though she has used the noticing program for more than fifteen years. The Court found Ms. Wheelock to be a very credible witness. The Court concludes that she met her burden of coming forward with evidence supporting the requirement that the violation was unintentional and that the violation occurred despite the maintenance of procedures adapted to avoid any such error. The [appellants] presented no evidence in rebuttal and so the [appellee] also met her burden of proof by a preponderance of the evidence.

(Bold emphasis added.)

The bankruptcy court correctly determined that "the notice does not strictly comport with the requirements of Section 1692g(a)(3)." However, it erred in finding that appellees qualified for the bona fide error exception.

The exception from liability due to a bona fide error requires that "the debt collector ***shows by a preponderance of evidence*** that the violation was not intentional **and resulted from a bona fide error** *notwithstanding the maintenance of procedures reasonably adapted to avoid any such error*." 15 U.S.C. § 1692k(c) (emphases added). This requirement is well-settled. *Heintz v. Jenkins*, 514 U.S. 291, 295 (1995); *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 231-32 (4th Cir. 2007). Here, the opinion of the bankruptcy court indicates some support for its determination that "the violation was unintentional." However, there is no evidence in the record indicating any support for the bankruptcy court's opinion that "the violation occurred despite the maintenance of procedures

11

adapted to avoid any such error."

The bankruptcy court's opinion acknowledges that appellee has been in the debt collection for some time, given that appellee "used the noticing program for fifteen years." Moreover, appellee "is no stranger to this court," and undoubtedly understands, or by now reasonably should understand, its responsibilities under the federal laws regulating its industry. *Foster v. Wheelock*, Civil Action No. 3:99-cv-00005, 2000 WL 1535455 at *4 (W.D. Va. Oct. 11, 2000) (citing *Shifflett v. Accelerated Recovery Systems*, Civil Action No. 3:95-cv-00070, 1996 WL 335379 (W.D. Va. May 23, 1996)); *see also Hendley v. Accelerated Recovery, et al.*, Civil Action No. 3:00-cv-00034 (W.D. Va.). The bona fide error defense is reserved for "clerical, calculation, computer malfunction and programming, and printing errors." 15 U.S.C. § 1640(c); *see also Semar v. Platte Valley Federal Sav. & Loan Ass'n.*, 791 F.2d 699, 705 (9th Cir. 1986) (quoting § 1640(c)). "Reliance on advice of counsel or a *mistake about the law is insufficient* to raise the bona fide error defense." *Scott v. Jones*, Civil Action No. 6:90-cv-00031, 1991 WL 156060 at *4 (W.D. Va. Mar. 1, 1991) (emphasis added) (citing *Baker v. G.C. Services Corp.*, 677 F.2d 775, 779 (8th Cir. 1982); and *Hulshizer v. Global Credit Services*, 728 F.2d 1037, 1038 (8th Cir. 1984)). Appellee offered no justification for sending out the letters other than Ms. Wheelock's ignorance of the law, and offered no evidence that it had any procedures in place to qualify for the bona fide error exemption from liability. To qualify for the exemption, appellee bears the burden to show, by a preponderance of the evidence, a greater degree of due diligence and effort than Ms. Wheelock's blind acceptance of software purchased fifteen years ago and "assur[ances]" she allegedly received "that everything was in compliance."[6]

---

[6] The bona fide error defense presents a mixed question of law and fact. *See, e.g., Educ. Credit Mgmt. Corp. v. Frushour*, 433 F.3d 393, 398-99 (4th Cir. 2005). As I have already noted, this court
(continued...)

12

*See Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507, 1514 (9th Cir. 1994) (refusing to grant a bona fide error exception where debt collector failed to provide any proof of procedures); *Allen v. NCO Fin. Servs., Inc.*, 2002 WL 1291791 (N.D. Ill. Jun. 11, 2002) (same). While Ms. Wheelock's statements arguably indicated her belief that she acted "within 'the spirit of the law,'" that is insufficient to qualify for the bona fide error exception. *Withers v. Eveland*, 988 F. Supp. 942, 948 (E.D. Va. 1997).

The bankruptcy court's factual finding that "the violation occurred despite the maintenance of procedures adapted to avoid any such error" was clearly erroneous. As a matter of law, the bankruptcy court erred in finding that appellee qualified for the bona fide error exemption. Accordingly, appellants' claims under § 1692g(a)(3) of the FDCPA will be remanded to the bankruptcy court for a statutory award, for costs and reasonable attorney's fees, as provided by § 1692k(a) of the FDCPA, and for consideration of an award of actual damages.

## IV.

The third question presented arises in all five cases in this consolidated action. The bankruptcy court stated as follows in each of the five cases (quoted verbatim, except for bracketed alterations):

> Even if the Court found the [appellee] to be in violation of one of these statutes, judgment could not be entered in favor of the [appellants]. The only damages asserted by the [appellants] are the fees that [they] incurred in prosecuting this action. This is not sufficient to support a judgment.

---

[6](...continued)
"review[s] the bankruptcy court's legal conclusions *de novo* and its factual findings for clear error," *In re Harford Sands Inc.*, 372 F.3d 637, 639 (4th Cir. 2004), and in cases where the issues present mixed questions of law and fact, the court applies the clearly erroneous standard to the factual portion of the inquiry and *de novo* review to the legal conclusions derived from those facts, *Gilbane Bldg. Co. v. Fed. Reserve Bank*, 80 F.3d 895, 905 (4th Cir. 1996).

13

> Courts are reluctant to award attorney's fees where such fees are, as here, the debtor's only damages. Salem v. Paroli, 260 B.R. 246, 257 (S.D.N.Y.2001) (Conner, J.). And in cases such as this one, where attorney's fees are the only injury from a non-willful violation of a stay, the denial of a motion for fees is required. Id.

> Lichtenstein, v. Cohen & Slamowitz, LLC (In re Lichtenstein), 2009 WL 874198 (S.D.N.Y.) Here the Plaintiff's damages consist only of counsel's attorney fees. Even if the Defendant had knowingly violated the statute, no judgment in favor of the Plaintiff would be appropriate.

The bankruptcy court's ruling is contrary to the FDCPA. In the first instance, the precedents cited by the bankruptcy court are completely irrelevant to the FDCPA. The FDCPA entitles a successful plaintiff to an award of actual damages, to a statutory award of up to $1000, and to costs and reasonable attorney's fees. 15 U.S.C. § 1692k(a); *see also McHugh*, 2003 WL 21283288 at *3-4; *Withers*, 988 F. Supp. at 947-48. The "purpose of attorney's fees is to encourage attorneys to prosecute cases that vindicate the objectives" of the FDCPA. *Dennis v. Columbia Colleton Medical Ctr., Inc.*, 290 F.3d 639, 652 (4th Cir. 2002); *see also McHugh*, 2003 WL 21283288 at *4.

The bankruptcy court's finding that appellants asserted only attorney's fees as damages was clearly erroneous, given that appellants' complaints in the bankruptcy court explicitly asked for actual, statutory, and punitive damages, in addition to attorney's fees.[7] And, as a matter of law, the FDCPA entitles appellants to attorney's fees and up to $1,000.00 as a statutory award, and the bankruptcy court failed to consider this. Furthermore, statutory damages and attorney's fees are

---

[7] I have reviewed the records of each of these cases. For every claim asserted in each of the complaints filed in the bankruptcy court, appellants requested "an award of actual damages, statutory damages, punitive damages and legal fees pursuant to" § 1692k.

appropriate in cases such as this.[8] *See, e.g., McHugh*, 2003 WL 21283288 at *3-4; *Withers*, 988 F. Supp. at 947-48. Accordingly, these claims will be remanded to the bankruptcy court for statutory awards, for costs and reasonable attorney's fees, and for consideration of awards of actual damages.

## V.

For the reasons stated herein, the judgments of the bankruptcy court regarding appellants' FDCPA claims in these consolidated cases will be reversed, and the claims will be remanded to the bankruptcy court for statutory awards of up to $1000, for costs and reasonable attorney's fees, and for consideration of awards of actual damages.

The Clerk of the Court is directed to send a certified copy of this Memorandum Opinion and the accompanying Order to the Clerk of the bankruptcy court and to all counsel of record.

Entered this  9th  day of March, 2010.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[8] Ms. Wheelock, on behalf of appellee, testified that she purchased the computer program which generated the collection letters at issue more than 15 years ago, and has been using it since to send collection letters. Ms. Wheelock did not testify or prove that she has made any attempt to investigate whether the program violated the law. In light of appellee's own admission of a fifteen-year history of sending these letters, the bankruptcy court should award at least some amount in statutory damages.